IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES B. JACKSON, III,

    Petitioner,

v.                                                                                          1:20-cv-00242-MV-LF

TIMOTHY HATCH, WARDEN, and
ATTORNEY GENERAL OF THE STATE OF
NEW MEXICO,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Charles B. Jackson's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1.[1] Respondents filed an answer, as ordered by the Court. Docs. 8, 11. Mr. Jackson filed a reply. Doc. 12. The Honorable Senior District Judge Martha Vazquez referred this case to me to pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 16. On September 13, 2021, I entered Proposed Findings and Recommended Disposition ("PFRD") finding that Mr. Jackson had filed a mixed petition, containing both exhausted and unexhausted claims, and recommending that the Court allow Mr. Jackson the choice of either proceeding with only his exhausted claims or dismissing his entire petition without prejudice. Doc. 22. On October 6, 2021, the Court adopted the PFRD and ordered Mr. Jackson to advise the Court within 30 days if

---

[1] Mr. Jackson filed his petition on the form entitled "Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus." *See* Doc. 1. The Court, however, determined that his petition should be construed under 28 U.S.C. § 2254 because it attacked the validity of his state conviction rather than the execution of his state sentence under § 2241. *See* Doc. 8 at 1 (citing *McIntosh v. U.S. Parole Comm'n,* 115 F.3d 809, 811 (10th Cir. 1997)).

he wished to proceed with only his exhausted claims.  Doc. 23.  On October 14, 2021, Mr. Jackson filed a motion requesting permission to dismiss his unexhausted claims and proceed with his exhausted claims, Doc. 24, which the Court granted, Doc. 26.  This PFRD therefore only addresses Mr. Jackson's three exhausted claims.  Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Mr. Jackson's petition.

I. **Background Facts and Procedural Posture**

Mr. Jackson was indicted in the Third Judicial District of the State of New Mexico ("trial court") and charged with two counts of trafficking a controlled substance by selling methamphetamine to undercover narcotics agents on April 7, 2016, and April 13, 2016.  Doc. 11-1 at 1, 3.  On July 27, 2018, a jury found Mr. Jackson guilty of both counts, both of which were second degree felonies.  Doc. 11-1 at 42–43; Doc. 11-2 at 1.

On August 27, 2018, Mr. Jackson filed a Motion For Lack of Due Process in the trial court.  Doc. 11-1 at 44–46.  In his motion, he argued that he was denied due process at trial because Deputy Chris Lopez of the Las Cruces Police Department ("LCPD") withheld some of the text messages relating to the undercover buys on April 7, 2016, and April 13, 2016.  *Id.* at 45.  In his motion, Mr. Jackson claimed that Deputy Lopez testified at trial that he and the LCPD "withheld" text messages from these dates.  *Id*.  In its response, the State of New Mexico ("State") argued that Mr. Jackson either mischaracterized or misunderstood Deputy Lopez's testimony at trial.  *See* Attachment A.[2]  The State asserted that Mr. Jackson "seems to conflate

---

[2] Although the State's response was not included with the answer to Mr. Jackson's § 2254 petition (Doc. 11), the Court takes judicial notice of documents in the state court criminal case. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records . . . and certain other courts concerning matters that bear directly upon the disposition of the case at hand").  The State's response is attached to this PFRD as Attachment A.

the State's duty of disclosure with its burden of proof at trial" and that the State "abided by its discovery obligation imposed by Rule 5-501 NMRA."[3]  *Id.*  The trial court summarily denied Mr. Jackson's motion.  Doc. 11-1 at 47.

On October 17, 2018, the trial court sentenced Mr. Jackson to ten years of imprisonment, followed by two years on parole.  Doc. 11-2 at 2.

On November 16, 2018, Mr. Jackson filed a notice of appeal with the New Mexico Court of Appeals ("NMCA").  *Id.* at 6.  Jonathan Miller, Mr. Jackson's trial counsel, filed the docketing statement.  *Id.* at 16–25.  The issues raised on direct appeal which are relevant to this habeas petition were that the trial court erred in denying Mr. Jackson's motion for prosecutorial misconduct and lack of due process (alleging that an officer deleted exculpatory text messages); and that counsel was ineffective for failing to investigate Mr. Jackson's allegations that text

---

[3] NMRA, Rule 5-501 governs disclosure by the state, and provides in relevant part:

> A. Information subject to disclosure. Unless a shorter period of time is ordered by the court, within ten (10) days after arraignment or the date of filing of a waiver of arraignment, subject to Paragraph E of this rule, the state shall disclose or make available to the defendant:
>
>> (1) any statement made by the defendant, or codefendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney;
>> . . .
>> (6) any material evidence favorable to the defendant which the state is required to produce under the due process clause of the United States Constitution.

NMRA, Rule 5-501(A)(1), (6).  A "statement" includes "any written, stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral declaration and which is recorded contemporaneously with the making of the oral declaration."  NMRA, Rule 5-501(G).

3

messages had been deleted. *Id*. at 23–24. The NMCA proposed summary affirmance.[4] *Id.* at 26–30. The NMCA proposed rejecting Mr. Jackson's claims of prosecutorial misconduct and denial of due process because

> The motions were premised on Defendant's contention that various recorded messages were deleted by the undercover police officer who orchestrated the controlled buys in this case. [DS 6-8; RP 110-13] However, the officer denied deleting any such evidence, [DS 5] and there is nothing in the record before us to substantiate Defendant's conflicting claims. [DS 4] Under the circumstances, we posit that the motions were properly denied. *See, e.g.*, *State v. Turrietta*, 2013-NMSC-036, ¶ 39, 308 P.3d 964 (rejecting a defendant's claim that his due process rights were violated based on the prosecution's suppression of favorable evidence, where the defendant cited no evidence suggesting that additional files existed).

*Id.* at 27. The NMCA also proposed rejecting Mr. Jackson's claims of ineffective assistance of counsel based on his attorney's failure to investigate and pursue his claim that text messages were deleted:

> "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Arrendondo*, 2012-NMSC-013,¶ 38, 278 P.3d 517 (internal quotation marks and citation omitted). "Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948, *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, 136, 267 P.3d 806.
> "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. As previously mentioned, in this case the record contains nothing to support Defendant's claim that recordings were lost or destroyed. Absent such support, Defendant cannot be said to have made a prima facie showing of ineffective assistance of counsel. *See, e.g.*, *State v. Holly*, 2009-NMSC-004, ¶¶ 35–37, 145 N.M. 513, 201 P.3d 844 (holding that a defendant failed to make a prima facie showing of ineffective assistance of counsel, where nothing on the record supported his claim that the prosecution had failed to disclose recordings to the defense, and nothing in the record suggested that such recordings would have benefitted the defense). We therefore propose to reject Defendant's claim.

---

[4] The NMCA assigned the case to the Summary Calendar pursuant to NMRA, Rule 12-210(D). Doc. 11-2 at 26; *see also* NMRA, Rule 12-210; *Torres v. Lytle*, 461 F.3d 1303, 1307 (10th Cir. 2006) (explaining the NMCA's calendaring procedures related to direct appeals).

*Id.* at 27–28.

Mr. Jackson, with new appellate counsel, filed a memorandum opposing the NMCA's proposed summary affirmance. *Id.* at 31–40. This memorandum reiterated the issues raised in his docketing statement, and additionally argued that the issues could not be properly resolved without a trial transcript. *Id.* at 32, 37–39. The NMCA issued a Memorandum Opinion affirming Mr. Jackson's convictions. *Id.* at 41–45. The NMCA stated that Mr. Jackson's renewed argument that "he was denied discovery of text messages which he contends were deleted by law enforcement officers" was, as the court had previously observed, "premised on [Mr. Jackson's] unsubstantiated assertions that the text messages existed." *Id.* at 43. The NMCA reasoned that

> Insofar as the district court was at liberty to reject that factual premise, we reject the assertion of error. *See, e.g.*, *State v. Turrietta*, 2013-NMSC-036, ¶ 139, 308 P.3d 964 (rejecting a defendant's claim that his due process rights were violated based on the prosecution's alleged suppression of favorable evidence, where the defendant failed to establish that the additional files existed).

*Id.*

Finally, the NMCA declined to take up the "factual dispute" about whether the text messages existed and were withheld. *Id.* at 43–44. The NMCA reasoned that Mr. Jackson's "assertions were at odds with the testimony of one or more law enforcement officers [DS 5] and under the circumstances, the district court was at liberty to reject [Mr. Jackson's] position." *Id.* at 44 (citing *State v. Dawson*, 1999-NMCA-072, ¶ 16, 127 N.M. 472, 983 P.2d 421 ("observing that it is for the district court as fact-finder to evaluate credibility, and explaining that the district court is not required to credit a defendant's assertions or protestations") and *Turrietta*, 2013-NMSC-036, ¶ 39 ("explaining, in a similar situation, that the district court is in the best position to evaluate whether any prosecutorial misconduct occurred")).

Mr. Jackson petitioned the New Mexico Supreme Court ("NMSC") for a writ of certiorari. Doc. 11-3 at 1–11. On October 25, 2019, the NMSC summarily denied his petition. *Id*. at 12–13.

## II. Mr. Jackson's Claims

Mr. Jackson is proceeding with his three exhausted claims: (1) his trial counsel was ineffective for failing to "look into missing text messages"; (2) narcotics agents "withheld exculpatory evidence" consisting of text messages between [him] and agent Chris Lopez which would have "proved [he] aborted the transactions he was charged with"; (3) the trial court erred and violated his due process rights by failing to heed his allegations of missing text messages. *See* Doc. 26. For the reasons explained below, I find that none of these claims have merit. I therefore recommend that the Court deny Mr. Jackson's petition.

## III. Federal Habeas Claims under the AEDPA

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), there is a two-step inquiry. The threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the

6

time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405. The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id*. Therefore, habeas relief under § 2254(d)(1) may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). The state court need not cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or

7

incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

Under AEDPA, state court findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2) must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen v. Pinholster*, 563 U.S. 179, 180–81 (2011) (citing § 2254(d)(1)). In other words, federal courts may not hold evidentiary hearings on claims that the state court decided on their merits. *Id.* at 181; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted), *overruled on other grounds as recognized in Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state's highest court offers no explanation for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The Supreme Court has held that the standard is "highly deferential" to state courts and "difficult to meet," as it "demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (quoting *Richter*, 562 U.S. at 101; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

For federal habeas claims not adjudicated on the merits in state courts, the Court must review the claim *de novo*, and the deferential standards of § 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

IV. Discussion

    **A. Mr. Jackson fails to show any error in the state court's denial of his ineffective assistance of counsel claim.**

Courts evaluate ineffective assistance of counsel claims under the two-prong test described in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The *Strickland* test is clearly established federal law within the meaning of Section 2254(d). *Cullen*, 563 U.S. at 189. Under *Strickland*, a petitioner must show by a preponderance of the evidence both that his counsel's performance "fell below an objective standard of reasonableness" *and* that "the deficient performance prejudiced the defense." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)) (emphasis in original). Courts identify these prongs as the performance prong and the prejudice prong. *See, e.g.*, *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks v. Workman,* 689 F.3d

9

1148, 1186 (10th Cir. 2012). A court reviewing an ineffective assistance of counsel claim under both AEDPA and *Strickland* is "highly deferential, and when the two apply in tandem, review is 'doubly' so." *Simpson*, 912 F.3d at 594 (quoting *Harrington*, 562 U.S. at 105).

To obtain federal habeas relief from a state court decision rejecting an ineffective assistance claim on the merits, a petitioner first must show that the state-court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Jones v. Warrior*, 805 F.3d 1213, 1218 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)). Mr. Jackson fails to demonstrate that the NMCA's decision[5] applying *Strickland* is contrary to or involved an unreasonable application of clearly established law, or is based upon an unreasonable determination of the facts.

> **1. Mr. Jackson fails to show that the state court's decision denying his ineffective assistance of counsel claim is contrary to or involved an unreasonable application of *Strickland*.**

A state-court decision is "contrary to" clearly established law if it (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price*, 538 U.S. at 640.

The NMCA did not apply a rule that contradicts the governing law as set forth in *Strickland*. Indeed, the NMCA applied the *Strickland* prongs in analyzing Mr. Jackson's

---

[5] The NMSC did not include any reasoning in its order denying Mr. Jackson's petition for certiorari. Doc. 11-3 at 12–13. This Court, therefore, "look[s] through" the unexplained decision of the NMSC to the decision of the NMCA—"the last related state-court decision that . . . provide[s] a relevant rationale"—and presumes that the NMSC adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

ineffective assistance of counsel claim. The state law cases cited by the NMCA are consistent with *Strickland*. The NMCA's explanation of the applicable law was as follows:

> "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Arrendondo*, 2012-NMSC-013,¶ 38, 278 P.3d 517 (internal quotation marks and citation omitted). "Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948, *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, 136, 267 P.3d 806.

Doc. 11-2 at 27–28. The *Strickland* standard is nearly identical to the law applied by the NMCA:

> To establish ineffective assistance of counsel . . . a claimant must show two things: (1) deficient performance—that trial counsel's conduct was objectively unreasonable; and (2) resulting prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 . . . (1984).

*Jones*, 805 F.3d at 1218. Thus, the NMCA did not apply a rule that "contradicts the governing law set forth in [Supreme Court] cases" in analyzing Mr. Jackson's ineffective assistance of counsel claim. *Price,* 538 U.S. at 640*; see also Jones v. Santiestevan*, No. 19cv0727 JB-KRS, 2022 WL 2355470, at *4 (D.N.M. June 30, 2022) (finding no error where New Mexico court relied on state rather than federal law because "New Mexico's formulation of the test of ineffective assistance of counsel essentially is the same as and consistent with the *Strickland v. Washington* standard"). Furthermore, Mr. Jackson neither argues nor provides citations to a Supreme Court case that would support the argument that the NMCA "confront[ed] a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[ed] at a result different from [that] precedent." *Price,* 538 U.S. at 640.

A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that

11

principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Mr. Jackson, however, does not argue that the NMCA's decision was an "unreasonable application" of clearly established federal law. *See* Doc. 1.[6] Thus, Mr. Jackson fails to show that he is entitled to relief for his ineffective assistance of counsel claim under 28 U.S.C. § 2254(d)(1).

> **2. Mr. Jackson fails to show that the state court's decision denying his ineffective assistance of counsel claim is based on an unreasonable determination of the facts.**

Because Mr. Jackson failed to show that the NMCA's decision was contrary to or involved an unreasonable application of clearly established federal law, he can only obtain federal habeas relief on his ineffective assistance of counsel claim if he can show that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under AEDPA, state court findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, a petitioner challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented, *see* § 2254(d)(2), must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El*, 545 U.S. at 240. Although a claim of ineffective assistance of counsel is a mixed question of law and fact, "a state court['s] findings of fact made in the course of deciding an ineffectiveness claim are [still] subject to the deference requirement of § 2254(d)." *Strickland*,

---

[6] Even if Mr. Jackson had not waived this argument by failing to raise it, the Court sees nothing unreasonable in the way the NMCA applied the law governing ineffective assistance of counsel claims. As discussed in Section IV(A)(2) of this PFRD, the NMCA rejected Mr. Jackson's ineffective assistance of counsel claim based on his failure to produce any evidence showing that text messages were deleted and/or not produced in discovery. This is not an unreasonable application of the law. *See, e.g.*, *Cummings v. Sirmons*, 506 F.3d 1211, 1228–29 (10th Cir. 2007) (rejecting a failure to investigate claim where petitioner presented "no actual evidence" to support his assertions, noting that petitioner's "allegations amounted to little more than speculation").

466 U.S. at 698.  Mr. Jackson fails to show that the NMCA's decision is based on an unreasonable determination of the facts in light of the evidence presented.

The NMCA denied Mr. Jackson's ineffective assistance of counsel claim based on its finding of fact that Mr. Jackson failed to present any evidence showing that the allegedly missing text messages exist.  The NMCA reasoned that "the record contains nothing to support [Mr. Jackson's] claim that recordings were lost or destroyed.  Absent such support, [Mr. Jackson] cannot be said to have made a prima facie showing of ineffective assistance of counsel."  Doc. 11-2 at 28 (citing *State v. Holly*, 2009-NMSC-004, ¶¶ 35–37, 145 N.M. 513, 201 P.3d 844 ("holding that a defendant failed to make a prima facie showing of ineffective assistance of counsel, where nothing on the record supported his claim that the prosecution had failed to disclose recordings to the defense . . . ")).  The NMCA's reasoning is consistent with federal case law, which holds that the failure to present any evidence showing that counsel erred is fatal to an ineffective assistance of counsel claim.  *See Cummings*, 506 F.3d at 1228–29 (rejecting a failure to investigate claim where petitioner presented "no actual evidence" to support his assertions, noting that petitioner's "allegations amounted to little more than speculation").

The NMCA further noted that Mr. Jackson's own docketing statement on appeal indicated that Deputy Lopez provided sworn testimony at trial in which he "denied deleting any electronic evidence."  Doc. 11-2 at 27 (citing Doc. 11-2 at 11).  The NMCA found that Mr. Jackson pointed to no evidence to substantiate his conflicting claim that evidence had been destroyed or withheld.  Doc. 11-2 at 27.  The NMCA reasoned that Mr. Jackson's "assertions were at odds with the testimony of one or more law enforcement officers [DS 5] and under the circumstances, the district court was at liberty to reject [Mr. Jackson's] position."  *Id.* at 44.  The NMCA opined that the trial court was the fact-finding tribunal and, as such, was "not required to

13

credit a defendant's assertions or protestations." *Id*. The NMCA stated that the trial court was in the best position to evaluate the facts, and declined to disturb the trial court's resolution of the matter. *Id.* Relying on the trial court's rejection of Mr. Jackson's factual claim that text messages had been destroyed or withheld, the NMCA rejected Mr. Jackson's "assertion of error." *Id.* at 43.

In his federal habeas petition, Mr. Jackson points to the trial transcript as proof that the agents deleted text messages and/or failed to provide exculpatory text messages to him. *See* Doc. 1 at 22–26. The NMCA did not consider the trial transcript in rendering its decision. The NMCA placed this case on its "summary calendar" and issued a summary disposition. *See* Doc. 11-2 at 26–30; 41–45. Trial transcripts are not filed with the NMCA for cases placed on the summary calendar. *See* NMRA, Rule 12-210(D)(1). In general, where, as here, state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen*, 563 U.S. at 180–81 (2011) (citing § 2254(d)(1)).

Even if this Court were to consider the trial transcripts submitted by Mr. Jackson, he still would not be entitled to habeas relief. The Tenth Circuit addressed the unique procedural posture of a § 2254 petition raising issues that have been decided on the merits by the NMCA through its summary calendar process. *Torres v. Lytle*, 461 F.3d 1303 (10th Cir. 2006). The Tenth Circuit concluded that if this Court limits its review of the facts to those presented to the NMCA, this Court must grant AEDPA deference to the decision of the NMCA. *Torres*, 461 F.3d at 1311–12. If this Court considers additional evidence not presented to the NMCA—such as a trial transcript—AEDPA deference is not required "if the trial transcript provides substantial evidence not in [Mr. Jackson's] pleadings with the NMCA." *Id*. at 1312. If, however, after reviewing the evidence not considered by the NMCA, this Court determines that "it adds nothing

of significance to [Mr. Jackson's] docketing statement[,]" this Court should "give AEDPA deference to the state court's decision." *Id*. at 1313.

Here, the trial transcript excerpts Mr. Jackson submitted to this Court add nothing of significance to the docketing statement he filed in the NMCA. Mr. Jackson claims that the trial transcripts he submitted show that Deputy Lopez admitted at trial that he deleted text messages from April 7, 2016, and April 13, 2016. Doc. 12 at 2 ("Agent Lopez's blatant [ad]mission to the missing text messages having to do with the trafficking transaction was not just an [ad]mission to the missing text messages but an open and apparent [ad]mission not only to a Brady violation (see *Brady vs. Maryland*) but an apparent [ad]mission to tampering with evidence."). But the trial transcripts cited by Mr. Jackson contain no such admissions by Deputy Lopez. Deputy Lopez only admits that not all of the text messages were introduced into evidence at trial. *See* Doc. 1 at 22 (Agent Lopez admitted that there were texts other than the three pages introduced at trial); Doc. 1 at 26 (Agent Lopez again admitted that the three pages introduced at trial did not constitute all the texts he exchanged with Mr. Jackson). Mr. Jackson illogically concludes that the fact that the state did not introduce all of the text messages at trial means that exculpatory evidence was deleted or not produced. Nothing requires the state to introduce all of the text messages at trial in order to prove its case.[7] The duty to disclose exculpatory evidence, *see Brady v. Maryland,* 373 U.S. 83 (1963) and NMRA, Rule 5-501, is different than the state's burden of proof at trial. The fact that Deputy Lopez testified that not all of the text messages he

---

[7] Mr. Jackson's trial counsel objected to the fact that only some of the text messages were introduced at trial based on "the rule of completeness." Doc. 1 at 22. This objection is based on the rules of evidence. *See* N.M. R. Evid., Rule 11-106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). The trial court overruled the objection. *Id*.

exchanged with Mr. Jackson were introduced at trial is not evidence that the state deleted or failed to provide exculpatory evidence. Given that the trial transcripts Mr. Jackson submitted to this Court "add[] nothing of significance to [Mr. Jackson's] docketing statement[,]" this Court still must "give AEDPA deference to the state court's decision." *Torres*, 461 F.3d at 1313. In short, Mr. Jackson presents no evidence that text messages were deleted or not produced. He therefore fails to point to any evidence showing that the NMCA erred in denying his claim of ineffective assistance of counsel. Mr. Jackson fails to show that the NMCA's decision is based on an unreasonable determination of the facts in light of the evidence presented and thus fails to state a claim for ineffective assistance of counsel under 28 U.S.C. § 2254(d)(2).

### B. Mr. Jackson fails to show any error in the state court's denial of his claim that agents "withheld exculpatory evidence."

Mr. Jackson asserts that he is entitled to federal habeas relief because narcotics agents involved in his case "withheld exculpatory evidence." Doc. 1 at 5. He alleges that Deputy Lopez withheld text messages that would have proven he aborted the transactions of which he was charged and convicted. *Id*. He alleges that Deputy Lopez testified at trial that these text messages were withheld. *Id*. Having reviewed the arguments and the record, I find that Mr. Jackson fails to show any error in the NMCA's analysis[8] of his claim that agents withheld exculpatory evidence

After he was convicted at trial, Mr. Jackson filed a Motion For Lack of Due Process in the trial court. Doc. 11-1 at 44–47. In his motion, he argued that he was denied due process at

---

[8] The NMSC did not include any reasoning in its order denying Mr. Jackson's petition for certiorari. Doc. 11-3 at 12–13. This Court, therefore, "look[s] through" the unexplained decision of the NMSC to the decision of the NMCA—"the last related state-court decision that . . . provide[s] a relevant rationale"—and presumes that the NMSC adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

16

trial because Deputy Lopez withheld some of the text messages from the undercover buys on April 7, 2016, and April 13, 2016. *Id.* at 45. In his motion, Mr. Jackson claimed that Deputy Lopez had testified at trial that he and the LCPD "withheld" text messages from these dates. *Id*. In its response, the State argued that Mr. Jackson either mischaracterized or misunderstood Deputy Lopez's testimony at trial. *See* Attachment A. The State asserted that Mr. Jackson "seems to conflate the State's duty of disclosure with its burden of proof at trial," and that the State "abided by its discovery obligation imposed by Rule 5-501 NMRA." *See id.* The trial court summarily denied Mr. Jackson's motion. Doc. 11-1 at 47.

Mr. Jackson filed an appeal with the NMCA. In his appeal, Mr. Jackson argued that the trial court erred in denying his motion to dismiss based on prosecutorial misconduct and lack of due process, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Doc. 11-2 at 23–24. The NMCA proposed summary affirmance. *Id.* at 26–30. The NMCA proposed denying Mr. Jackson's claims of prosecutorial misconduct and denial of due process because

> The motions were premised on Defendant's contention that various recorded messages were deleted by the undercover police officer who orchestrated the controlled buys in this case. [DS 6-8; RP 110-13] However, the officer denied deleting any such evidence, [DS 5] and there is nothing in the record before us to substantiate Defendant's conflicting claims. [DS 4] Under the circumstances, we posit that the motions were properly denied. *See, e.g.*, *State v. Turrietta*, 2013-NMSC-036, ¶ 39, 308 P.3d 964 (rejecting a defendant's claim that his due process rights were violated based on the prosecution's suppression of favorable evidence, where the defendant cited no evidence suggesting that additional files existed).

*Id*. at 27.

Mr. Jackson argued in opposition to the NMCA's proposed summary affirmance, asserting that he needed a trial transcript to ascertain whether Deputy Lopez testified that he had withheld text messages. *Id*. at 36–37. The NMCA ultimately denied Mr. Jackson's claim on the

17

basis that his argument was premised on "unsubstantiated assertions that the [exculpatory] text messages existed." *Id*. at 43. The NMCA reasoned that

> Insofar as the district court was at liberty to reject that factual premise, we reject the assertion of error. *See, e.g.*, *State v. Turrietta*, 2013-NMSC-036, ¶ 139, 308 P.3d 964 (rejecting a defendant's claim that his due process rights were violated based on the prosecution's alleged suppression of favorable evidence, where the defendant failed to establish that the additional files existed).

*Id*. at 43.

In *Brady v. Maryland*, the Supreme Court held that that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. To prove a *Brady* violation, Mr. Jackson must prove that (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material. *See United States v. DeLuna*, 10 F.3d 1529, 1534 (10th Cir. 1993). "A *Brady* claim fails if the existence of favorable evidence is merely suspected. That the evidence exists must be established by the defendant." *United States v. Erickson*, 561 F.3d 1150, 1162–63 (10th Cir. 2009) (citing *United States v. Lopez*, 372 F.3d 1207, 1209–11 (10th Cir. 2004) ("because defendant failed to establish that government had promised leniency to prosecution witnesses, there could be no Brady violation in government's failure to turn over documentation of such promises") and *United States v. Warren*, 454 F.3d 752, 759 (7th Cir. 2006) ("defendant failed to establish existence of any document withheld by government, so 'his Brady claim fails to get off the ground.'")).

Mr. Jackson's *Brady* claim fails because he fails to show that the exculpatory text messages he alleges agents deleted and/or failed to produce even exist. *See Erickson*, 561 F.3d at 1162–63. The NMCA denied Mr. Jackson's claim of error based on this failure to produce evidence. Likewise, as discussed above, the additional evidence Mr. Jackson submitted to this

court in the form of trial transcripts does not provide any evidence that text messages were deleted and/or not produced, or that exculpatory texts even existed. Because Mr. Jackson fails to point to any evidence showing that allegedly missing exculpatory text messages existed, "his Brady claim fails to get off the ground." *See Warren*, 454 F.3d at 759. Mr. Jackson fails to show that his state-court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). I therefore recommend that the Court dismiss this claim with prejudice.

### C. Mr. Jackson fails to show any error in the state court's denial of his claim that the trial court erred by failing to heed his allegations of missing text messages.

Mr. Jackson alleges that the trial court erred and denied him due process by failing to heed his allegations of missing text messages. Doc. 1 at 7. This claim of error is dependent on his claim that his due process rights were violated by agents withholding and/or deleting text messages that would have shown he aborted the transactions for which he was convicted. As discussed above, however, Mr. Jackson has failed to show that agents violated his due process rights. Consequently, he has failed to show any error by the trial court. Because Mr. Jackson fails to show any error by the trial court, he has no basis for federal habeas relief in this Court. I therefore recommend that the Court dismiss this claim with prejudice.

### V. Recommendation

Mr. Jackson fails to show that the state court erred in denying his ineffective assistance of counsel claim, his claim that agents "withheld exculpatory evidence," or his claim that the state court erred in failing to heed his allegations of missing text messages. I therefore recommend

that the Court deny Mr. Jackson's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) and dismiss this case with prejudice.

## VI. Certificate of Appealability

Lastly, I address whether Mr. Jackson is entitled to a certificate of appealability. No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only if Mr. Jackson "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, Mr. Jackson has failed to make this showing. I therefore recommend that the Court deny Mr. Jackson a certificate of appealability.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id*. **In other words, if no objections are filed, no appellate review will be allowed.**

---

_Laura Fashing_
Laura Fashing
United States Magistrate Judge